## Quigley Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

HUNTER, J., Auditing Judge.—This trust arose under paragraph 3 of the will of James J. Quigley, who

died on May 12, 1933, whereby testator bequeathed $25,000 to his trustees therein named, in trust, to pay the net income therefrom to his daughter, Mary V. Logan, for life.

The accounting is of the fund awarded to the accountant in trust for Mary V. Logan by the adjudication of Sinkler, J., filed on March 2, 1934, and was filed by reason of her death.

Mary V. Logan died a resident of Philadelphia County on April 1, 1954, leaving a will duly admitted to probate, of which she appointed Girard Trust Corn Exchange Bank and Madeline E. Dooley executors.

By paragraph 9 of his will testator gave the residue of his estate, one third to his son, John A. Quigley, absolutely, one third in trust for his daughter, Mary V. Logan, and the remaining one third in trust for his daughter, Lillian G. Conley.

With respect to the residuary trust for Mary V. Logan testator provided that upon her death (if Lillian G. Conley alone of testator's children survive her), the principal of testator's estate from which she received the income should continue in further trust "upon the same uses and purposes and on the same trusts as the share of my estate herein given in trust for my daughter, Lillian G. Conley and her descendants".

Testator's son, John A. Quigley, died April 24, 1934, leaving a will duly admitted to probate, whereby he gave the residue of his estate in trust and appointed Provident Trust Company of Philadelphia trustee.

The trustee under the will of John A. Quigley, deceased, claims one third of the principal of the $25,000 trust created for testator's daughter, Mary V. Logan, contending that testator failed otherwise to dispose of the remainder interest, and that the principal, therefore, falls into testator's residuary estate.

Lillian G. Conley contends that testator expressly disposed of the remainder interest of the $25,000 trust

for Mary V. Logan by paragraph 9(11) of his will whereby he gave one third of his residuary estate in trust for his daughter, Mary V. Logan, and provided that upon her death (should Lillian G. Conley alone of testator's children survive her) "the principal of my estate, the income from which my said daughter Mary V. Logan would have received if living, shall continue in trust for the same uses and purposes and on the same trusts as the share of my estate herein given in trust for my daughter, Lillian G. Conley, and her descendants".

She claims that when testator gave in further trust "the principal of my estate" of which Mary V. Logan had received the income, he thereby included and disposed not only of the remainder of the Logan residuary trust, but also of the remainder interest of the Logan $25,000 trust.

It is well settled that if testator did not specifically dispose of the remainder of the Logan $25,000 trust, it falls into testator's residuary estate. A residuary clause is one which covers all of the estate not disposed of after providing for debts and particular legacies and devises: Shannon v. Reed, 355 Pa. 628; Wills Act of April 24, 1947, P. L. 89, sec. 14(9), 20 PS §180.14. To avoid this result, therefore, language must be found in the will by which testator expressly or by clear implication otherwise disposes of the remainder interest of the Logan $25,000 trust. In expounding a will the question is not what testator meant, but what is the meaning of his words. The will must be expressed in writing, and that writing only is to be considered: Britt Estate, 369 Pa. 450. Interpretation is never to assume the proportions of reformation: Wharton App., 373 Pa. 360.

By separate paragraphs distinctly numbered testator gave the corporate shares in his business to his son, John A. Quigley, absolutely; $25,000 in trust for his

daughter, Mary V. Logan; $25,000 in trust for his daughter, Lillian G. Conley; $25,000 in trust for his granddaughter, Madeline E. Dooley, and in addition bequeathed three separate pecuniary legacies of $1,000 each. Testator then disposes of "all the rest, residue and remainder of my [his] estate". In none of the paragraphs by which he created separate trusts of $25,000 each for Mary V. Logan, Lillian V. Conley and Madeline E. Dooley, does testator dispose of the remainder. To conclude that testator intended to bequeath the remainder of the Logan $25,000 trust by the same provision by which he disposed of the Logan residuary trust would impute to testator's language a doubtful implication which is not justified by a consideration of the entire will. While it happens that the $25,000 trust literally was principal from which Mary V. Logan received the income, I do not believe that testator intended that it should be included in the disposition of the Logan residuary trust. I am supported in my belief by the fact that testator created a similar trust of $25,000 for his granddaughter, Madeline E. Dooley, for whom there is no residuary trust from which an intention to dispose of principal could be gathered. I conclude, therefore, that the remainder interest of the Logan $25,000 trust was not specifically bequeathed and falls into testator's residuary estate. Where a trust is established without dispositive direction concerning the remainder, it falls into testator's residuary estate: Zoller Estate, 373 Pa. 451. I so decide. . . .

*James A. McTague* and *Walter B. Gibbons*, for exceptants.

*Thomas A. McNab*, contra.

SAYLOR, J., June 24, 1955.—We are here concerned with the principal of a $25,000 trust fund created by testator in paragraph 3 of his will for the benefit of his daughter, Mary V. Logan, during her life without

any provision for disposition thereof on her death. She died April 1, 1954.

The question before us is a narrow one. Is there to be an award of the fund making it a part of testator's residuary estate or does it go into a residuary trust created out of a third of the residuary estate for the benefit of testator's second daughter, Lillian G. Conley, and her descendants? If the former disposition is made the estate of testator's only son would take one third of the $25,000 principal. If the latter disposition is made all of it not merely two thirds, would go to the trust created for the daughter, Lillian.

Testator in creating a trust of one third of his residuary estate for his daughter Mary in paragraph 9, section II, provided in the fourth unnumbered subparagraph thereof, as follows:

"In case my daughter Lillian G. Conley, alone of my children survive my daughter Mary V. Logan, then the principal of my estate, the income from which my said daughter Mary V. Logan would have received if living, shall continue in trust for the same uses and purposes and on the same trusts as the share of my estate herein given In Trust for my daughter Lillian G. Conley and her descendants."

The trustees for Lillian contend that thereby testator disposed of not only the Mary V. Logan residuary trust principal, but of the $25,000 trust principal as well. However, the auditing judge found that this would impute to testator's language a doubtful implication not justified by a consideration of the entire will. He ruled that the trust principal fell into testator's residuary estate.

A consideration of the will as an entirety reveals the thought with which testator provided for the disposition of his estate and the care he exercised in making provision for his children and grandchildren. It induces belief that he neither intended to make no

specific provision for the disposition of the $25,000 trust for Mary, nor was negligent in failing to do so.

Testator had three children, a son and two daughters. Considering their situations he seems to have tried to treat them all fairly and equitably in disposing of his estate. He gave his business to his son. He created three $25,000 trusts, one for each of his two daughters and one for his granddaughter.

Then, after making three gifts of $1,000 each, he divided his residuary estate into three equal parts, one for each child. The son received his one third outright just as he received the father's business. Each of the two daughters received her share in trust for life. In the case of Mary V. Logan testator provided for nine different possible dispositions of principal upon her death. In the case of Lillian G. Conley he provided for five different possible dispositions upon her death. Some of these fourteen possibilities called for outright bequests to the son, John, of the whole or one half of the trust res concerned but only if he were living at the time of the life tenant's death. All of the other possibilities involved a continuation of the trust for the benefit of Mary or Lillian or the descendants of Lillian.

Meticulously testator planned and provided in his will for cash benefits to his son, for life interests for his daughters and for the descendants of his daughter, Lillian, including her daughter, Madeline E. Dooley. Time and time again testator provided that upon the happening of one or another event the principal of the trust established for Mary should upon her death be continued for the benefit of Lillian and her descendants. Only if John survived Mary was any distribution to be made to him. John died April 24, 1934, a year after his father.

In the case of the trust established for Lillian, only if John survived Lillian was he to receive any portion

of the principal upon her death, and even then only if she left no descendants. In no instance did testator make any provision for the issue of John. Only if living at the time of distribution was he to participate therein.

Testator finally provided (paragraph 9, sec. III, subparagraph 5) that in case of the death of Mary and Lillian and of Lillian's descendants "there is no one herein named as beneficiary or beneficiaries of the income and principal of the trusts herein created for the benefit of my said daughters Mary V. Logan and Lillian G. Conley and her descendants, *then the principal and the unexpended income of such trusts herein created for the benefit of my daughter Mary V. Logan shall be assigned, transferred and paid* over as my daughter Mary V. Logan shall by her last Will and Testament direct, limit and appoint, and the principal and unexpended income of such trusts herein created for the benefit of my daughter Lillian G. Conley and her descendants shall be assigned, transferred and paid over as my daughter Lillian G. Conley shall by her last Will and Testament direct, limit and appoint".

In other words, with John, Mary and Lillian dead the trust principal benefits Lillian's descendants. If they, too, be dead then at her death the survivor of the two daughter life tenants may exercise the power of appointment. The whole scheme of testator provides for ultimate enjoyment of trust principal by Lillian's descendants, if any. There are such descendants, including Madeline E. Dooley.

But the significant thing about the last-quoted provision of the will is the italicized clause (underlined in original will) : "*the principal and the unexpended income of such trusts herein created for the benefit of my daughter Mary V. Logan . . .*". The word *trusts* is plural and yet there is only one trust for Mary created out of the residuary estate. Testator must have

had in mind also the $25,000 trust. He must have thought that here he was naming the remainder interests in the $25,000 trust and making provision for final disposition thereof if and when the time came when no daughters or descendants of Lillian were living.

Actually, in our opinion, he made full provision for the disposition of the $25,000 fund when in paragraph 9, sec. II, subparagraph 4, above quoted, he used the clause: "the principal of my estate, the income from which my said daughter Mary V. Logan would have received if living." Surely income received by Mary in her lifetime from the $25,000 fund was income from "the principal of my [testator's] estate". That clause can have no other meaning. Testator did not say "the principal of my residuary estate". To limit the reference to that portion of testator's residuary estate which was set aside for Mary in the second section of paragraph 9 of the will is to take a liberty with the language used by testator and to effect a result he did not intend.

Interpretation of a will is never to assume the proportions of reformation: Wharton Appeal, 373 Pa. 360.

There is no ambiguity or uncertainty as to testator's intention. He did not employ the word "residuary" in the clause quoted. The court has no power to insert it there. The sole question is: What is the meaning of the words testator employed?: Britt Estate, 369 Pa. 450.

There is no uncertainty here, no ambiguous language calling for the resort to canons of interpretation: Haydon's Estate, 334 Pa. 403.

A study of the entire testamentary scheme and of the specific language employed by testator obliges us to reach the conclusion that he intended to have the $25,000 trust fund continue in existence upon his daughter Mary's death for the benefit of his daughter

Lillian and her descendants. We believe that to find otherwise would do violence to testator's will.

The fact that testator made no specific provision for the ultimate disposition of an equal amount of principal in the trust he set up for Madeline E. Dooley does not deter us from our decision. While admittedly testator did not create out of his residuary estate, as he did for his two daughters, a trust wherein he named his granddaughter as a principal life tenant, nevertheless, as a descendant of Lillian G. Conley Mrs. Dooley becomes a life tenant upon her mother's death and thereby participates in the share of the residuary estate set aside for her mother. Ultimately principal of this trust and of the $25,000 trust would apparently pass under language similar to that employed by testator in the paragraphs relating to the Mary V. Logan trust. In paragraph 9, sec. III, subparagraph 1, testator said:

"upon the death of the survivor of my said great grandchildren, being the children of my grandchild Madeline E. Dooley, living at the time of my death, I direct that the principal share of my estate, the income from which is given to my daughter Lillian G. Conley *and her descendants* shall be assigned . . .".

The Dooley trust fund is not before us, however, and we make no ruling as to its disposition in the future.

We conclude that there was error in the adjudication and sustain the exceptions thereto. The adjudication is amended to provide for distribution of principal as requested by the accountants, namely, for award back to the trustees in further trust.

The exceptions are sustained and the adjudication, as herein amended, is confirmed absolutely.

Hunter, J., dissents for the reasons given in his adjudication.