Britt Estate.

451

Argued January 11, 1952. Before DREW, C. J.,
STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Warren S. Spalding,* with him *Gilbert Cassidy, Jr.,*
*Joseph H. Cochran* and *Fell & Spalding,* for appellants
in Appeals Nos. 28, 29, 30 and 31.

*Cassin W. Craig,* with him *Leonard A. Talone,* for
appellant in Appeal No. 34.

*John F. Thaete,* with him *William F. Fox, Walter B. Gibbons* and *Fox & Honeyman,* for certain appellees in Appeals Nos. 28, 29, 30, 31 and 34.

*Russell J. Brownback,* with him *Roger B. Reynolds* and *Donald J. McGonigal,* for certain appellees in Appeals Nos. 28, 29, 30, 31 and 34.

OPINION BY MR. JUSTICE BELL, March 24, 1952:

Where a testamentary residuary trust estate is created to pay the income for life to each of five specifically named nephew and nieces and upon the death of a nephew or niece to pay $10,000 from the trust principal to each living child of a nephew or niece so dying, is this gift of $10,000 payable to each living child *of all* of testatrix' nephews and nieces or only to each living child *of the five named* nephew and nieces who were the life tenants?

Rose A. Britt, the testatrix, died April 4, 1949 leaving a last will dated December 3, 1947, and three codicils. Her gross estate exceeded $700,000; her residuary estate was approximately $418,000. After some personal and charitable bequests, testatrix gave $10,000 to her brother, Benjamin T. Britt, and $1,000 to to each of his children who survived her. The next paragraph of her will contained the following controversial gift: "ELEVENTH. All the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate, real, personal and mixed, I give, devise and bequeath to my Trustees hereinafter named, IN TRUST, to invest the same and keep the same invested and until the time fixed for the termination of the trust as hereinafter provided, to pay over the net income quarterly, in equal shares, *to and among such of the following nephews and nieces of mine\** as may

---

\* Italics throughout, ours.

be living at each such quarterly period of distribution:
Edward C. Britt, Esther N. Lipp, Miriam K. Grauch,
Rosemary Britt and Vera A. Jones; provided, however,
that upon the death of a nephew or niece of mine leav-
ing a child or children him or her surviving, my Trus-
tees shall pay over out of the principal of the trust es-
tate the sum of Ten Thousand Dollars ($10,000.), to
each living child of a nephew or niece of mine so dy-
ing. IN TRUST upon the death of the *last survivor
of my aforenamed nephews and nieces,* I direct my
Trustees, or the survivor of them, to convert the entire
trust fund as it may then exist (after providing for
the children of my nephews and nieces as hereinabove
set forth) into cash, . . ."; and to pay the balance to
certain named charities. Testatrix also executed three
codicils, the last of which, dated January 24, 1948, was
informal and contained the following statement:
"Knowing that my brother Ben's children will be very
well provided for, accounts for my leaving less to them.
I love them all dearly."

Testatrix at the time she executed her will had one
brother who was living, Benjamin T. Britt, and five
brothers who were deceased. Two brothers, Albert J.
and Walter F. Britt, were dead without issue; one
brother, Edward, left one child, Rosemary Britt; one
brother, Charles, left three children, Esther N. Lipp,
Miriam K. Grauch and Edward C. Britt; and one
brother, William, left one child, Vera A. Jones, then
living. This nephew and these four nieces were *spe-
cifically named* as life tenants in the residuary
(eleventh) paragraph of testatrix' will. Ben had six
living children who were between 36 and 48 years of
age, and one child who was deceased, leaving four sur-
viving children. The testatrix at the time she made her
will knew this family situation, as well as the fact that
Ben was very wealthy (he died two years later worth
over a million dollars).

454

Appellants, who are (a) Ben's grandchildren, and (b) the guardian and trustee ad litem for Ben's minor and unborn grandchildren, claim that each of them is (or will be) entitled to a legacy of $10,000 under the proviso clause of the eleventh paragraph of the will. Appellees claim that the $10,000 bequest is made only to each living child of *the named* nephew or niece who are the life tenants of the residuary trust estate. Each claimant apparently contends that the language of the residuary clause and of the entire will is clear and unambiguous; but the appellants contend that it means one thing, and the appellees contend it means exactly the opposite. The lower court believed that the will was ambiguous and therefore admitted extrinsic evidence in order to aid it in ascertaining the testatrix' intent. Possibly for this reason, each party quoted well-known canons of construction to demonstrate the soundness of their construction of the will.

The pole star in the construction of every will is the testator's intent: *Woelpper's Appeal,* 126 Pa. 562, 17 A. 870; *Mulert Estate,* 360 Pa. 356, 61 A. 2d 841; *Byrne's Estate,* 320 Pa. 513, 181 A. 500. "The testator's intent must be ascertained by a consideration of the *entire will* which of course must be read in the light of the circumstances surrounding him when he made it: Packer's Estate (No. 1), 246 Pa. 97, 92 A. 65; Hermann's Estate, 220 Pa. 52, 58, 69 A. 285; Mulert Estate, 360 Pa. 356, 61 A. 2d 841; March Estate, 357 Pa. 216, 53 A. 2d 606. The attendant circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property: Fahey's Estate, 360 Pa. 497, 500, 61 A. 2d 880; Mayer's Estate, 289 Pa. 407, 137 A. 627; Frisbie's Estate, 266 Pa. 574, 109 A. 663.": *Newlin Estate,* 367 Pa. 527, 529, 80 A. 2d 819.

In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be

ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, *but what is the meaning of his words*: *Conner's Estate,* 346 Pa. 271, 29 A. 2d 514; *Ludwick's Estate,* 269 Pa. 365, 112 A. 543. Where a testator's intent is clear from the language of his entire will, technical rules or canons of construction are unnecessary; it is only where the intent is uncertain or the language ambiguous that such canons should be resorted to: *Haydon's Estate,* 334 Pa. 403, 6 A. 2d 581; *Snyder Estate,* 359 Pa. 138, 58 A. 2d 178; *Walker's Estate,* 344 Pa. 576, 26 A. 2d 456.

Placing ourselves in the testatrix' armchair and considering the circumstances by which she was surrounded in order to assist us in arriving at her intention as expressed in the four corners of her will, *Jackson's Estate,* 337 Pa. 561, 12 A. 2d 338; *Clark Estate,* 359 Pa. 411, 59 A. 2d 109, we believe the intention of this testatrix is clear. After a bequest to brother Ben of $10,-000 and a bequest of $1,000 to each of Ben's living children, she gave her residuary estate in trust to pay the net income to five *named* nephew and nieces for their respective lives, with the proviso that upon the death of a nephew or niece leaving a child or children him or her surviving, the trustees were to pay out of the principal of the trust estate $10,000 to each living child of such nephew or niece so dying. *Upon the death of the last survivor of her aforenamed* (viz. five named) *nephews and nieces,* the balance of the residuary estate, after paying the above mentioned $10,-000 legacies, was to be paid to named charities. It will be noted that the children of testatrix' brother, Ben, were excluded from gifts of income in this eleventh paragraph, but the proviso clause thereof containing the $10,000 gift to each living child of "a

nephew or niece so dying" is at first blush sufficiently broad to include the children of any and every nephew and niece of the testatrix including Ben's children. *However, this clause cannot be disassociated from the rest of the language of the eleventh paragraph of the will or from the codicil or from the general scheme of the entire will.* Under appellants' construction of this one clause, although Ben's surviving children are not provided for in the gift of income, each of their children are entitled upon the death of their respective parent to receive $10,000 out of the principal of the residuary trust fund which was clearly set apart for the primary purpose of producing income not for their parent nor for their branch of the family but for five named nephew and nieces. The implausibility and unreasonableness of this construction is, we believe, apparent from a reading of the entire eleventh paragraph of the will and as we shall see from other parts of the will and the last codicil. For example, the gift over in the eleventh paragraph of the will to certain named charities takes effect not upon the death of the last survivor of my nephews and nieces, but "upon the death of the last survivor of my *aforenamed* nephews and nieces". If appellants' construction were correct, it would mean that the testatrix (1) intended as she clearly said that her residuary estate should terminate upon the death of the last survivor of her five named nephews and nieces, yet also (2) intended to give to each of Ben's surviving grandchildren $10,000 upon the death of each of Ben's six children, some of whom might outlive testatrix' five named life tenants. This would substantially reduce the income payable to the five named nephews and nieces and would create uncertainty and conflicting intentions as to the duration of the trust, and consequently is not a reasonable construction. Moreover, the testatrix had in the eighth

paragraph of her will given Ben $10,000 absolutely, and in the ninth paragraph of her will had given to each of Ben's children who survived her $1,000 absolutely; and had stated in an informal codicil: "Knowing that my brother Ben's children will be very well provided for, accounts for my leaving less to them." This indicates an intention to exclude Ben's branch of the family from the residuary trust estate.

We are of the opinion that the testatrix' intention is clear from the language of the eleventh paragraph of the will read as a whole; and that this interpretation is fortified by the language and the scheme of her entire will and codicils, viz., that the grandchildren of testatrix' brother, Benjamin T. Britt, are not included in the $10,000 bequest which, on the contrary, is limited to each living child of testatrix' named nephew and nieces. For these reasons it is unnecessary to discuss the canons of construction quoted by both parties, nor any other contentions of the appellants.

Decree affirmed. Costs to be paid from the principal of the trust estate.