434 A.2d 1213

**In re the ESTATE OF Robert G. BAKER, Deceased.**

**Appeal of Edwin and Genevieve. OLSON.**

Supreme Court of Pennsylvania.

Submitted April 21, 1981.

Decided Sept. 24, 1981.

John E. Rydesky, Emporium, for appellant.

Merle G. Johnson, Port Allegany, for executor.

John A. Duvall, Coudersport, for residuary legatees.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

WILKINSON, Justice.

This is an appeal from a decree of the Court of Common Pleas of Cameron County dealing with the disputed ownership of various items of personal property as well as the distribution of the above estate. The decree directed appellants to surrender a John Deere bulldozer to appellee, executor of the estate, or to pay the reasonable value thereof into the estate. It further denied appellants' claim to distribution of a 1973 Buick sedan and to the contents of a safe.[1]

---

1. The safe's contents at issue here are: (1) a certificate for 100 shares of American Telephone & Telegraph Co. stock, (2) a certifi-

The safe was found within the house devised to appellants together with its furnishings. The car presumably was found in the garage. The decree directed that the car and the contents of the safe be included in the residue of the estate.[2]

Robert G. Baker died testate on April 15, 1977, leaving a will which he had executed on April 6, 1977. ITEM II of the will stated: ".I give, devise and bequeath my house and garage, located in the Borough of Emporium, as well as all furnishings within said house, to my neighbors and good friends, EDWIN OLSON and GENEVIEVE OLSON, absolutely."

Appellee-executor petitioned the trial court to determine ownership of the John Deere bulldozer in the appellants' possession, the car, and the contents of the safe alleging that appellants claimed ownership of the bulldozer as an inter vivos gift and of the car and the safe's contents as part of the devise of the house and all its furnishings under ITEM II of the will. Appellants filed an answer to the petition. At a hearing held on November 9, 1977, the appellants, the appellee-executor (who also drafted the will), Mr. Grovanz, two friends of the decedent and two of decedent's attending nurses testified. The lower court noted the appellee's objection to the testimony of the donees but allowed them to testify reserving the right to rule on the issue after the hearing. The lower court held: (1) that the contents of the safe and the car did not pass to appellants by ITEM II of the will; (2) that the appellants' testimony concerning the alleged inter vivos gift of the bulldozer was inadmissible under the Dead Man's Act;[3] and (3) that the decedent did

cate of title to a 1973 Buick sedan vehicle, and (3) an individual mortgage payable to Robert G. Baker.

2. The decree also directed a Mr. Pete Grovanz, a co-respondent in the proceeding below, to surrender a Fordson tractor with highlift or pay the reasonable value thereof into the estate. Grovanz did not appeal.

3. Act of May 23, 1887, P.L. 158, 28 P.S. § 322, repealed by Section 2(2) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. § 2002(a)[742]. A similar act is now found in 42 Pa.C.S. § 5930.

not make an inter vivos gift of the bulldozer to the appellants. We affirm.

■ Appellants first argue that the lower court erred in ruling that ITEM II of the will did not include the contents of the safe and the car. Principles governing the interpretation of a will are well settled. One of these is that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. *Lewis Estate*, 407 Pa. 518, 180 A.2d 919 (1962). The words in ITEM II of the will "my house and garage" are clear and unambiguous and must be given their common meaning, *i. e.* the property and the structures themselves. The only question is whether the car in the garage and the safe's contents could be included within the phrase "all furnishings within said house."

The pole star in the construction of every will is the testator's intent . . . . In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, *but what is the meaning of his words.*

*Britt Estate*, 369 Pa. 450, 454–55, 87 A.2d 243, 244–45 (1952) (emphasis in original; citations omitted). The car, which apparently was found in the garage after the testator's death, certainly cannot be included within the phrase "furnishings within said house". As for the contents of the safe, the meaning of the word "furnishings" does not normally include the contents of a safe. The word "furnishings" as defined by WEBSTER'S NEW INTERNATIONAL DICTIONARY, 1021 (2d ed. 1948) means "furniture, fixtures, apparatus, etc." Even in cases where the testator specified that the bequest include the "contents" of the house the courts have held that this word does not include money, stocks, mortgage papers or bank accounts found within the house. *Lamb Estate*, 445 Pa. 323, 285 A.2d 163 (1971); *McCartney's Estate*, 61 Pa. D. & C. 112 (1947).

■ Basically the appellants' argument relies upon testimony by witnesses who stated that the testator said he wanted the car, the house and everything in the house to go to the appellants. The appellants argue that this shows the testator's intention. This oral testimony, however, cannot be used to alter the clear and unambiguous language used in the testator's will.

> [T]his Court has consistently decided that in construing a will, it is not what testator may have meant but the meaning of the language used. ... The intention of the testator, however, must be determined from what appears *upon the face of the will.* Extrinsic evidence of surrounding facts must only relate to the meaning of *ambiguous* words of the will. It cannot be received as evidence of testator's intention independent of the written words employed.

*Battles Estate,* 379 Pa. 140, 143–44, 108 A.2d 688, 690 (1954) (emphasis in original; citations omitted). The lower court was correct in denying appellants' claim to the contents of the safe and the car.

The controversy concerning the ownership of the bulldozer involves two interrelated legal questions. First, was the testimony of appellants concerning the alleged inter vivos gift admissible under the Dead Man's Act? Second, was a valid inter vivos gift of the bulldozer proven?

The application of the Dead Man's Act has been thoroughly discussed elsewhere. *See Hendrickson Estate,* 388 Pa. 39, 130 A.2d 143 (1957). There is no dispute here that the three conditions enumerated in *Hendrickson Estate* are present in this case and bring the provisions of the Dead Man's Act into play. The difficulty here is the application of the Dead Man's Act where there is an allegation of an inter vivos gift. Appellants argue that the evidence shows a gift by decedent to them thereby removing the adverse interest of the decedent and making appellants competent to testify. We have encountered this argument in the past and have fashioned the following answer to it:

> In such situations, both the alleged donee and the estate have an interest in the property which may be adverse to

the interest of the decedent, depending on whether the alleged transfer took place or not. We held [in *Ford Estate*, 431 Pa. 185, 245 A.2d 443 (1968)] that if a valid inter vivos transfer can be shown by independent evidence *before* the admission of any testimony by the alleged donee, the donee will be considered to represent the interest of the decedent and will be permitted to testify. Conversely, if the alleged donee fails to establish a prima facie gift by independent testimony before he takes the stand, he will not be competent to testify.

*Friedeman v. Kinnen*, 452 Pa. 365, 368–69, 305 A.2d 3, 4 (1973) (emphasis in original).

Applying this approach to this case, we note that four witnesses were called by appellants prior to when they took the stand themselves. All four of the witnesses related general conversations they had had with the decedent prior to his death. Only one witness' testimony related to the bulldozer, the item in question here. This witness, a nurse attending the decedent prior to his death, described how, during one of the appellants' visits to the decedent in the hospital, the decedent was asking the appellants to take care of several tasks he could not accomplish from his hospital bed. The nurse testified that Mrs. Olson came to her desk in the hospital and said that the decedent wanted someone to write down these things he needed accomplished so that the appellants would be sure to get everything done correctly. The nurse complied and wrote down nine items on a piece of scrap paper. This paper was introduced as evidence during the nurse's testimony. One of the items is: "Take bulldozer to your house." The nurse's testimony is limited to what she did in the decedent's room and the fact that she accurately abbreviated into one sentence or phrase the general instruction the decedent was making. None of her testimony relates to whether the decedent was making a gift of this item or not.

Prior to the appellants' testimony we have, therefore, only this general instruction on a piece of paper as evidence of an inter vivos gift. This phrase alone is more

easily interpreted as a request that his neighbors take the bulldozer to their house for safekeeping than that it was a gift to them. Indeed, the appellee-executor testified that he had spoken with the appellants shortly after the decedent's death at which time they informed him they had the bulldozer at their house for safekeeping. This instruction has no words indicating transfer of ownership nor did the nurse testify that any such words were uttered. The appellants had the burden of proving that the decedent, with donative intent, had delivered, either actually or constructively, the bulldozer to them and that the decedent had divested himself of and invested them with requisite dominion over the bulldozer. *Donsavage Estate*, 420 Pa. 587, 218 A.2d 112 (1966). "To establish such a gift inter vivos the evidence must arise not only from legally competent witnesses but also be clear, direct, precise and convincing." *Id.*, 420 Pa. at 594, 218 A.2d at 118. Because no prima facie evidence of a gift was established, appellants' testimony was correctly ruled incompetent under the provisions of the Dead Man's Act. Certainly if no prima facie evidence of an inter vivos gift was presented, the existence of an inter vivos gift was not proven.

Decree affirmed. Each party to pay own costs.

LARSEN, J., concurs in the result.