## Shimrak Estate

*John D. McBride,* for purchasers Churchin.
*Paul W. Stefano,* for executrix.
*Rosemary Markham,* for purchaser Shimrak.

REED, *P.J.,* December 9, 1987 — There are four petitions now pending before the court in the above-captioned estate. The first petition was filed by the executrix to have an option given to Richard Shimrak declared null and void.

John Shimrak died, testate, December 24, 1984. At the time of his death, he owned a building which he was leasing to Richard John Shimrak, his son. The son had previously purchased from his father a convenience store business which is located in the building in question. He attempted to secure financing to purchase the building under the option but for various reasons failed and eventually advised the executrix, his sister, that he would not purchase the building. Thereafter, he advised his sister that he wanted to buy the building after he obtained a loan in April, 1987. In the meantime on March 3, 1987, the executrix signed an agreement to sell the

building to Richard A. and Sharon A. Churchin. The Churchins filed a petition to intervene in the dispute. Richard now petitions the court to restrain the sale and to remove his sister as executrix.

The option, part of a lease agreement between decedent and his son and daughter-in-law, reads in pertinent part:

"Lessees shall have an option to purchase the within premises . . . at any time after May 31, 1982 or within 9 months after death of the lessor herein, whichever shall occur first . . . ".

By its own terms the option has expired. There would seem to be no doubt that the option is null and void at this time.

Richard J. Shimrak, who is entitled to one-half interest in his father's estate, also filed a petition seeking to have his sister, Barbara Deliman, removed as executrix of the estate. In support of his position, petitioner alleges that the executrix filed no inventory or inheritance tax returns, exposed the estate to penalty and interest for failure to file returns in a timely manner, and has acted in a manner detrimental to petitioner's interests in handling the estate.

The executrix filed an inventory contemporaneously with an answer to the petition and maintained that, although no inheritance tax returns had been filed, payments of those taxes were made to avoid penalty and interest charges to the estate. Further, respondent avers that she has faithfully and prudently discharged her duties as executrix and has caused no detriment or loss to the estate.

By statute the court is given "exclusive power to remove a personal representative when he is wasting or mismanaging the estate . . ., or has failed to perform any duty imposed by law; or . . . when, for any other reason, the interests of the estate are like-

ly to be jeopardized by his continuance in office."
P.E.F. Code, Act of June 30, 1972, P.L. 508, §2, eff.
July 1, 1972, 20 Pa.C.S. §3182.

Although removal of a personal representative is
within the court's discretion, the Pennsylvania Su-
preme Court recognizes that when a testator per-
sonally choses his executor, he signifies his trust
and confidence in that individual. *In re Estate of
Lux, 480* Pa 256, 389 A.2d 1053 (1978). Therefore,
the removal of the executor of an estate "is a drastic
action which should be undertaken only when the
estate within the control of such personal represen-
tative is endangered. To justify the removal of a tes-
tamentary personal representative the proof of the
cause for such removal must be clear." Id. at 269,
389 A.2d at 1059, quoting *Beichner Estate* 432 Pa.
150, 247 A.2d 779 (1968) (citing cases).

In *Beichner Estate,* supra, animosity and ill-feel-
ing existed between the executrix and beneficiary
and the executrix failed to file an inventory or a
statement of debts and deductions or pay the trans-
fer inheritance tax although she attempted to ac-
count for her failures in her answer to the removal
petition. The Pennsylvania Supreme court ruled
that on this record the court below should not have
removed the executrix "absent a showing of any im-
pact on the handling and management of the estate
arising from any ill-feeling existing between [the
executrix] and [the beneficiary] or that [the] estate
has been jeopardized by such animosity." Id. at 158,
247 A.2d at 782, 783.

In the case at bar no evidence on the record dem-
onstrates that the estate is being mismanaged or
wasted or that, assuming antagonism and unfriend-
ly feelings exist between the executor and Mr.
Shimrak, such animosity has jeopardized the estate
of Mr. Shimrak's interest therein. Accordingly, the

petition for removal of fiduciary must be denied.

Richard Shimrak also complained that because his sister had not filed an inventory he was not able to determine if there was going to be any money available to him to be used toward purchasing the building. In addition he contended that she refused to inform him as to how much she had received from their father so that he could determine the effect of the second paragraph of the will on his share of the estate. That paragraph provides as follows:

"Second: I give and bequeath the sum of $50,000 to my daughter, Barbara Deliman, only on the condition that I have not made such a gift to her outright prior to my death either in cash or by a certificate of deposit or other security registered jointly in my name and my daughter's. This gift is to offset an agreement entered into with my son, Richard John Shimrak in which an option was given to him to purchase my real estate at a price which, in my opinion, is approximately one-half of its fair market value."

Richard Shimrak filed the petition to restrain the sale claiming, inter alia, that since he was an heir, occupying the real estate under a lease, the sale should not take place unless the executrix can show that it was necessary to administer the estate.

No case law addresses this exact situation, but authority does exist to support the position that heirs and devisees who are interested in obtaining real property included in the estate should be given the first opportunity to do so.

In *Melcher Estate*, 47 D.&C. 2d 332 (1968), one of the heirs submitted written notice to the executor offering to buy the property at a stated sum and indicating her willingness to engage in competitive bidding on the property. The executor accepted a bid for the private sale of decedent's real estate, and

the heir petitioned the court to restrain the executor from going forward with the sale. The court ordered that the private sale be restrained and further ordered a public sale of the property (1) at a sale restricted to children and grandchildren of the testatrix, or (2) at a sale not so restricted provided the petitioner make a firm offer at a sum not less than $13,000. The court noted that "[T]he executor and its trust officer owe the fullest fiduciary obligation to the legatees of the testatrix; to deal openly and fairly with them; to do everything possible to obtain the highest and best price for the real estate of the decedent." Id. at 336.

Additionally, it is clear that an executor or administrator does not have absolute discretion to sell property against the request of a distributee to take in kind unless it is reasonably necessary to pay debts or make distribution. *Vandergrift Estate,* 406 Pa. 14, 37, 177 A.2d 432, 443 (1962); *Lehman Estate,* 2 D.&C. 2d 276 (1955).

While these cases are not controlling, they do provide guidance — especially in light of the general rule that the testator's intention is the pole star in the construction of every will. *In re Estate of Baker,* 465 Pa. 522, 434 A.2d 1213 (1981); *Benedum Estate,* 427 Pa. 408, 235 A.2d 129 (1967).

"[T]he testator's intent, if not unlawful must prevail. The common law has consistently proclaimed that the testator's intent is the crux in interpreting every will. . . ." *Estate of Jacobson,* 460 Pa. 118, 122, 331 A.2d 447, 449 (1975).

In this case it is clear that decedent contemplated that petitioner Richard Shimrak would purchase the real estate in dispute. In fact, sometime prior to the death of John Shimrak petitioner Richard purchased the business which was conducted on the premises. Petitioner has attempted to purchase the

property and has finally procurred appropriate financing. Orphans' Court is a court of equity and equitable principles require that the claim of Richard Shimrak be given some consideration. It is evident from the record that decedent's intention was that his son should be given the opportunity to purchase the property. In light of this and the fact that as an heir, an interest in the real estate in question passed to him on the death of his father, we have concluded that before the executrix can sell the real estate it must be established that the sale is necessary for the orderly administration of the estate. In addition, since the executrix has a duty to realize as much as possible from the sale of this asset, we think there is an obligation to give the petitioner an opportunity to bid on the property.

"It is the orphan's court division's duty to supervise the disposition of a decedent's property in a manner which is conducive to the best interests of all parties concerned, and the court has the power to restrain a personal representative from making a sale or from carrying out a contract of sale made by him, if that is the best interests of the estate . . ." Standard PA Practice Vol. 32, 119.

For these reasons we enter the following order on the various petitions.

## ORDER

Now, this December 9, 1987, the petition of Richard and Sharon Churchin to intervene is hereby granted.

Petition of executrix of the estate, Barbara Deliman, to declare the option null and void is also granted. Said option is hereby declared to be null and void.

The petition of Richard Shimrak to remove the executrix is hereby denied.

The petition of Richard Shimrak to restrain the sale of the real estate is hereby granted.

The executrix is hereby ordered and directed to offer the property for sale to the highest bidder, either at public or private sale. Sale not to be made final until approved by the court.