578 A.2d 1279

**Albert F. MAIER and Albert F. Maier, Jr., Executors of the Estate of Walter J. Sudu a/k/a Walter Sudu, Deceased, Appellees,**

**v.**

**Earl L. HENNING, Gunnar M. Henning and Maynard W. Henning, t/a Gem Properties, Appellants,**

**and**

**Joseph Sudu, Stanley Sudu and Anna Percz, Appellees.**

Supreme Court of Pennsylvania.

Submitted April 2, 1990.

Decided Aug. 22, 1990.

162

Edward J. Hayes, Patricia Carroll, Philadelphia, for appellants.

Leon H. Kline, Philadelphia, Martin H. Philip, Harry A. Jacobowitz, Palmerton, for Joseph & Stanley Sudu and Anna Percz.

Roger N. Nanovic, II, Jim Thorpe, for Albert F. Maier & Albert F. Maier, Jr.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue raised by this appeal is whether specifically devised real property may be sold by a testator's personal representative without the joinder of the specific devisees as required by section 3351 of the Probate, Estate and Fiduciaries Code, 20 Pa.C.S.A. § 3351,[1] where the testamentary instrument devising the real property gives a general power to the personal representative to sell all of the property in the testator's estate.

Walter Sudu (Decedent) died testate on May 19, 1980. His Last Will and Testament (Will) was admitted to probate by the Register of Wills of Carbon County on May 27, 1980, and Letters Testamentary were granted to appellees Albert F. Maier and Albert F. Maier, Jr., Esquires (Executors) on the same date. At the time of his death, Decedent owned numerous parcels of real property valued at more than $500,000, and personalty in the amount of approximately $175,000.

Decedent's Will contained several specific bequests and devises, including a devise to his brothers and sister, appellees Joseph Sudu, Stanley Sudu, and Anna Percz (Devisees), of a 17.1 acre parcel of property in Carbon County, which property was used as a truck stop that was subject to a lease with Interstate Traveller Services, Inc. Included in the lease and also specifically devised to the Devisees were four neighboring properties: 1) a 1.99 acre parcel with a sewage treatment plant; 2) a 50 by 50 foot parcel on which a high-rise advertising sign was located; and 3) two parcels containing easements from the truck stop to the sewage treatment plant and the high-rise sign location.

1. Section 3351 provides in relevant part as follows:
    Except as otherwise provided by the will, if any, the personal representative may sell, at public or private sale, any ... real property not specifically devised, and with the joinder of the specific devisee real property specifically devised....
    20 Pa.C.S.A. § 3351.

In addition, Decedent's Will contained provisions for the payment of all estate taxes and debts solely from the residuary of the estate, and a general grant of authority to the Executors to "sell, lease, pledge, mortgage, transfer, exchange, convert or otherwise dispose of any and all property at any time forming a part" of Decedent's estate as "they may deem advisable."

■ On October 29, 1981, the Executors presented a Petition for Leave to Sell at Private Sale to the Orphans' Court Division of the Court of Common Pleas of Carbon County. The Executors averred in the petition that the Will of the Decedent gave them the authority to sell the real estate described in the petition, but that they were "nevertheless desirous of obtaining Court approval of the sale." Para. 5, Petition for Leave to Sell at Private Sale, Reproduced Record at 18a.[2] The real property which was the subject of that petition included the four neighboring properties to the truck stop which properties had been specifically devised to the Devisees.[3] Although counsel for the Devisees was served with a copy of the Petition for Leave

2. The Agreement of Sale attached to the Petition for Leave to Sell at Private Sale made the sale contingent upon the "approval of the Orphans' Court of Carbon County of the terms and conditions" of the Agreement of Sale. Para. 10, Agreement of Sale, Reproduced Record at 29a. Where executors have the power to sell real or personal property, but they make an agreement of sale contingent upon the approval of the orphans' court, it is for the orphans' court "to determine whether the proposed sale [is] in the best interests of the beneficiaries under the decedent's will." *Estate of Penrose,* 486 Pa. 9, 12, 403 A.2d 982, 983 (1979). Although the orphans' court judge herein found that the sale price was a better price than could be obtained at public sale, there was no finding made regarding the best interests of the beneficiaries.

3. These four parcels were within the perimeter description of the deed prepared by the executors to effectuate the private sale proposed in the orphans' court, but they were specifically described in an "Under and Subject to" clause in the deed. This clause was interpreted by the orphans' court judge to mean that the parcels were merely subject to a preexisting lease and that fee title to these parcels was intended to be passed to the grantees. Opinion of the Court at 13–14 (Aug. 6, 1987). The Executors have contended that the deed only conveyed an easement to the grantees with respect to these parcels. This matter, however, is not presently before this Court. Accordingly, we will accept the orphans' court interpretation for the purpose of our discussion of the issues which remain in the case.

to Sell at Private Sale, no answer was filed, and the orphans' court approved the sale by decree. On January 22, 1982, the Executors conveyed the property described in the petition to the appellants, Earl L. Henning, Gunnar M. Henning and Maynard W. Henning trading as Gem Properties, for the consideration of $21,900.

On September 7, 1983, the Executors filed an action for declaratory judgment seeking a declaration of the respective rights of the Devisees and the appellants in the four disputed parcels of real property. The orphans' court determined that appellants had a fee simple title in the disputed property by virtue of the deed from the Executors of Decedent's estate. On appeal by the Executors and the Devisees, Superior Court reversed and remanded for the entry of judgment in favor of the Devisees. *Maier v. Henning*, 378 Pa.Super. 410, 548 A.2d 1266 (1988). We granted appellants' petition for allowance of appeal, and we now affirm the decision of the Superior Court.

■ The Probate, Estate and Fiduciaries Code requires the joinder of specific devisees of real property when a personal representative wishes to sell specifically devised real property. 20 Pa.C.S.A. § 3351.[4] This requirement, however, is subject to the powers granted to the personal representative in the will. The Decedent herein provided that the Executors could sell any and all property of the estate, without excepting specifically devised property.

Additionally, the Decedent clearly intended for the estate debts and expenses to be paid from the residuary estate. Paragraph 5 of the Will provided:

I direct that there shall be paid from and charged *exclusively to the residue, remainder and balance of my estate remaining after providing for the foregoing bequests and specific devises,* all debts, expenses of any nature, costs, commissions, fees, inheritance, succession

4. Where the specifically devised real property must be sold in order to pay debts, taxes, and other expenses, the orphans' court would have to approve the sale of the specifically devised real property absent the joinder of the specific devisee.

and estate taxes, together with any interest or penalties thereon, imposed upon or payable with respect to any property which may be included as a part of my estate for the purposes of such taxes. My executors *shall not collect or seek reimbursement for any such debts, expenses of any nature, costs, commissions, fees and any such taxes from any other source....*

(emphasis added)

■ Section 3541 of the Probate, Estate and Fiduciaries Code gives priority of distribution to specific devises, unless otherwise provided by will, where the assets of a decedent's estate are insufficient to pay all claimants and distributees in full. 20 Pa.C.S.A. § 3541(a). *See also* 72 Pa.C.S.A. § 1744(a) (providing for the payment of inheritance tax from the residuary estate in the absence of a contrary intent appearing in the will). Thus, a personal representative may only sell specifically devised estate property with the consent of the devisee, or where the proceeds from such sale would be needed to satisfy debts, taxes, and other expenses incurred in the administration of the estate, or if the will so provides.

■ The general grant of authority to sell estate property given to the Executors herein by the Decedent's Will must be interpreted in light of the clear direction of the Decedent to satisfy estate debts from the residuary estate. There were sufficient residuary estate assets for the payment of estate expenses and debts. Indeed, the Petition for Leave to Sell at Private Sale does not set forth any purpose for the sale of estate property to appellants. Thus, by the terms of the Will and the facts of this case, the Executors did not have the authority to sell the *specifically devised* real property, and were required to obtain the joinder of the Devisees before conveying any interest in the specifically devised real property as required by the Probate, Estate and Fiduciaries Code.[5]

---

5. Although a devisee acquires legal title to specifically devised real property at the death of the testator, this title is expressly subject to the powers of the personal representative under the Probate, Estate

■ Appellants further argue that the failure of the Devisees to respond to the Petition for Leave to Sell at Private Sale constituted the requisite joinder in the sale of the specifically devised real property. This Court has stated that "[t]he terms of the [Probate, Estate and Fiduciaries Code] must be strictly complied with if the legislative purpose is not to be thwarted...." *Quality Lumber & Millwork Co. v. Andrus,* 414 Pa. 411, 419–20, 200 A.2d 754, 759 (1964). The purpose of the Code was "to create stability of procedure for disposition of decedents' realty and personalty and certainty in marketability of title." *Id.* at 419, 200 A.2d at 759. Failure to respond is not, by any stretch of the imagination, the legal equivalent of an act that would constitute joinder in the conveyance of real property, and certainly would not appear in the chain of title to such property. To permit inaction on the part of a specific devisee to fulfill the statutory requirement of joinder would promote the antitheses of "stability" and "certainty" in title that strict compliance with the terms of the statute provides. Hence, we do not permit a conveyance of specifically devised real property without an *affirmative* act of joinder on the part of the specific devisees under section 3351 of the Probate, Estate and Fiduciaries Code.

Accordingly, we affirm the order of the Superior Court and remand the case to the Orphans' Court Division of the Court of Common Pleas of Carbon County for further proceedings consistent with this opinion.

McDERMOTT, J., did not participate in the consideration or decision of this matter.

FLAHERTY, J., filed a dissenting opinion joined by NIX, C.J.

and Fiduciaries Code and the testamentary instrument and to all orders of the court. 20 Pa.C.S.A. § 301(b). Thus, until distribution is made, the proper source of the full legal title of a decedent is *both* in the devisee and in the personal representative. *See Tigue v. Basalyga,* 451 Pa. 436, 304 A.2d 119 (1973); *Quality Lumber & Millwork Co. v. Andrus,* 414 Pa. 411, 200 A.2d 754 (1964).

FLAHERTY, Justice, dissenting.

I dissent. The sale of the property at issue was fully authorized by Decedent's will.

The Probate, Estate and Fiduciaries Code, 20 Pa.C.S. § 3351, which defines the power of an executor to sell specifically devised real property, imposes a requirement that the devisee join in the sale only under certain circumstances. The Code expressly applies *only* where the power of an executor to sell property has not been adequately defined in the will. The Code provides:

> *Except as otherwise provided by the will,* if any, the personal representative may sell, at public or private sale, any personal property whether specifically bequeathed or not, and any real property not specifically devised, and with the joinder of the specific devisee real property specifically devised.

20 Pa.C.S. § 3351 (emphasis added).

The present will contained an express authorization for the executors, in their sole and absolute discretion, to sell any and all estate property. It was not necessary, therefore, for the Devisees to join in a sale. Paragraph 8 of Decedent's will provided, in pertinent part:

> I *expressly authorize* my executors, in their *sole and absolute discretion* ... to *sell,* lease, pledge, mortgage, transfer, exchange, convert or otherwise dispose of *any and all property at any time forming a part of my estate,* in such manner, at such time or times, for such purposes, for such prices and upon such terms, and conditions, as they may deem advisable; ... and to execute and deliver such instruments as may be necessary to carry out any of these powers.

(Emphasis added). This language, in plain and unambiguous terms, authorized the sale of any and all estate property. No exception was provided for property which had been specifically devised.

Nevertheless, the decision of the majority holds that the will should be interpreted as not having made the power of

sale applicable to specifically devised real property. The majority reasons that, upon consideration of the will in its entirety, there is evident a testamentary scheme which did not contemplate the sale of such property.

It could, perhaps, be speculated that Decedent might have *preferred* that the property in question not have been sold. In interpreting a will, however, we are *constrained to apply the language chosen by the testator*, rather than engage in speculation as to intent. The language chosen is the determinative evidence of that intent. As stated in *Bloom v. Selfon*, 520 Pa. 519, 523, 555 A.2d 75, 77 (1989), "[t]his Court has repeatedly enunciated the principles governing interpretation of wills, emphasizing that the keystone is ascertainment of the intent of the testator *as expressed in the actual language of the will.*" (Emphasis added). Similarly, in *Britt Estate*, 369 Pa. 450, 454–55, 87 A.2d 243, 245 (1952), we stated:

> In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, *but what is the meaning of his words....*

(Emphasis in original). See also *Toland Estate*, 495 Pa. 482, 486, 434 A.2d 1192, 1194 (1981) (" 'The duty of the court is not to determine what the testator might or should have said in light of subsequent events but, rather, the actual meaning of the words used.' ") (quoting *Blough Estate*, 474 Pa. 177, 185, 378 A.2d 276, 280 (1977)). Thus, when a will as written is clear and unambiguous, its plain meaning must be given effect. *Schwenk Estate*, 507 Pa. 409, 414–15, 490 A.2d 428, 430–31 (1985); *Baker Estate*, 495 Pa. 522, 525, 434 A.2d 1213, 1214 (1981).

Paragraph 8 of Decedent's will is clear and unambiguous in its conferral of broad powers of sale upon the executors, bestowing "sole and absolute discretion" to sell "any and all" estate property. Specifically devised property is plainly within the range of property subject to sale. Also, it cannot

be said that Paragraph 8 is inconsistent with the existence of specific devises, for it is possible for both specific devises and broad executors' powers of sale to coexist. See *O'Brien Estate*, 381 Pa. 322, 325, 112 A.2d 178, 180 (1955) ("[E]very clause and every word of a will must be construed together and given effect if that is reasonably possible...."). The present sale by the executors was, therefore, fully authorized.

The Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 301(b), provides that "[l]egal title to all real estate of a decedent shall pass at his death to his heirs or devisees, *subject, however, to all the powers granted to the personal representative by this code and lawfully by the will ....*" (Emphasis added). The title acquired by the Devisees was, thus, subject to the executors' power of sale, and, when the properties were transferred to the appellants, the appellants acquired title.

In reaching a contrary conclusion, the majority sets a dangerous precedent by declining to apply the *expressed* intent of the testator. Indeed, it would be difficult to imagine testamentary language that more clearly conferred the power to sell property than that presented here.

The majority places great emphasis on the fact that the will states that debts are to be paid from the residuary of the estate rather than from specifically devised property. This case does not, however, involve a dispute over the source from which debts are to be paid. The property at issue was not sold for the purpose of paying debts. The majority's emphasis is clearly misplaced. By inferring from Paragraph 5 that Decedent might have preferred that the property not be sold, the proper focus of this case has been distorted. We are called upon to decide what Decedent *authorized,* not what Decedent in hindsight might have *preferred.*

Finally, the opinion of the majority quoted the following statement of the purpose of the Probate, Estate and Fiduciaries Code: "[T]o create stability of procedure for the disposition of decedents' realty and personalty and certainty

in the marketability of title." *Quality Lumber & Millwork Co. v. Andrus*, 414 Pa. 411, 419, 200 A.2d 754, 759 (1964). The decision reached, however, undermines this purpose by making it impossible for executors, and for purchasers of estate property, to rely upon express statements of executors' powers set forth in wills. Disposition of estate property will plainly be hindered by placing parties at risk of having these powers ignored by the courts.

Accordingly, I believe the Superior Court erred in reversing the summary judgment which had been entered in favor of the appellants. The order of the Superior Court should, therefore, be reversed.

NIX, C.J., joins this dissenting opinion.