J-A17034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DARLENE MELTON ON BEHALF OF ESTATE OF LEONARD BROOKS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| STATEWIDE ABSTRACT GROUP INC., NANCY SCHU, NOTARY, MUSTAFA SALAH, ARMANDO AHMAD, SOLOMON PASCAL PROPERTY MANAGEMENT, INC., CHICAGO TITLE INSURANCE COMPANY, & MILDRED E. BROOKS | |
| APPEAL OF: DARLENE MELTON | No. 1796 EDA 2014 |

Appeal from the Order Entered May 1, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): September Term, 2013 No. 01313

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 21, 2016**

Appellant, Darlene Melton on behalf of the estate of Leonard Brooks, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas, which sustained the preliminary objections of Appellees, Statewide Abstract Group Inc. ("Statewide Abstract"), Nancy Schu (notary), Mustafa Salah, Armando Ahmad, Solomon Pascal Property Management, Inc. ("Solomon Pascal"), Chicago Title Insurance Company ("Chicago Title"), and Mildred E. Brooks, and dismissed Appellant's amended complaint with

_____

*Retired Senior Judge assigned to the Superior Court.

prejudice. We affirm.

The relevant facts and procedural history of this case are as follows. On August 10, 2011, Appellant filed a *praecipe* for *lis pendens* upon a parcel of real property located at 2919 W. Girard Avenue in Philadelphia ("Property") and a *praecipe* for writ of summons ("2011 action"). In the amended complaint filed November 21, 2011, Appellant purported to act as administratrix of the estate of her deceased father, Leonard Brooks, and brought an action to quiet title and for adverse possession against her aunts, Mildred E. Brooks and Edith Brooks (the sisters of Leonard Brooks), individually and as heirs to the estate of Mildred A. Brooks (Appellant's deceased grandmother). With respect to the quiet title count, Appellant alleged, *inter alia*, (1) Mildred A. Brooks (Appellant's deceased grandmother) was the owner of the Property; (2) Mildred E. Brooks knew she was not the rightful owner of the Property; and (3) Mildred E. Brooks was posing as the rightful owner of the Property and attempting to sell the Property with the help of Edith Brooks, to the detriment of rightful heirs. Appellant asked the court to quiet title in her favor and against her aunts.[1]

On December 9, 2011, Aunts Mildred E. Brooks and Edith Brooks filed preliminary objections claiming, *inter alia*, (1) Leonard Brooks was survived

---

[1] In her adverse possession count, Appellant claimed her father had exclusive, complete, actual, open, notorious, hostile, and continuous undisputed possession of the Property for more than twenty-one years.

by four adult children at the time of his death, one of whom is Appellant; (2) Appellant's letters of administration for Leonard Brooks' estate were revoked on November 9, 2011, when the Register of Wills learned Appellant was not the sole heir to her father's estate, as she had claimed; and (3) Appellant lacked standing to bring the 2011 action because she is not the personal representative of the estate of Mildred A. Brooks or of Leonard Brooks. Mildred E. Brooks and Edith Brooks also claimed Mildred E. Brooks is the owner of the Property, not Mildred A. Brooks.

By order dated March 13, 2012 and entered March 15, 2012, the trial court sustained the preliminary objections to the 2011 action and dismissed Appellant's amended complaint against her aunts with prejudice. In addition, the court ordered the Philadelphia Department of Records to remove the *lis pendens* on the Property. Appellant did not appeal this decision. On May 25, 2012, Mildred E. Brooks sold the Property to Mustafa Salah and Armando Ahmad, who subsequently sold the Property to Solomon Pascal.

On September 12, 2013, Appellant filed another *lis pendens* on the Property and a *praecipe* for writ of summons ("2013 action") against the present owner of the Property (Solomon Pascal), the title insurance underwriter (Chicago Title), the closing agent who handled the sale of the Property (Statewide Abstract), the notary (Nancy Schu), the people who sold the Property to Solomon Pascal (Mustafa Salah and Armando Ahmad), and

Mildred E. Brooks. Appellant initially filed a *pro se* complaint against Chicago Title only, but she filed an amended *pro se* complaint on February 24, 2014, naming all Appellees as defendants. Appellant purportedly brought the 2013 action on behalf of the estate of her father, Leonard Brooks. Appellant alleged she received letters of administration for her father's estate in July 2011.[2] Appellant again claimed Mildred A. Brooks owned the Property. Appellant insisted Mildred E. Brooks fraudulently sold the Property on May 25, 2012, while the 2011 action was pending.[3] Appellant emphasized that on the document transferring title to Mustafa Salah and Armando Ahmad, her aunt's signature says Mildred E. Brooks, with the "E" crossed out and replaced with an "A." Appellant claimed this evidence proved Mildred E. Brooks was posing as Mildred A. Brooks. Appellant further alleged all other Appellees were involved in the fraudulent transfer. Appellant maintained she contacted the Philadelphia District Attorney's Office and filed a private criminal complaint disclosing Mildred E. Brooks' fraudulent transfer of the Property[4]; Appellant averred she filed her 2013 action and *praecipe* for *lis*

---

[2] Appellant omitted that her letters of administration had been revoked in November 2011.

[3] Appellant did not appeal the court's March 15, 2012 order, so the 2011 action was no longer pending on May 25, 2012.

[4] Nothing in the certified record supports Appellant's contention that a criminal investigation is pending. Rather, the record shows Appellant contacted the District Attorney's Office multiple times and a detective was
*(Footnote Continued Next Page)*

- 4 -

*pendens* to prevent "re-transfer" of the Property pending the alleged criminal investigation. Appellant sought monetary damages against all Appellees.

On March 9, 2014, Appellant filed a motion to stay the proceedings until "the criminal case is finally disposed." The court denied Appellant's requested relief. On March 13, 2014, Chicago Title filed preliminary objections claiming, *inter alia*, Appellant lacked standing to bring the current action because she is not the personal representative of her father's estate, Appellant filed the *lis pendens* in derogation of the court's March 15, 2012 order which dismissed with prejudice Appellant's 2011 action, and Appellant failed to state a claim against Chicago Title for which relief could be granted. Other Appellees filed similar preliminary objections. Chicago Title also filed a motion to dismiss the complaint under Pa.R.C.P. 233.1,[5] which Nancy Schu

*(Footnote Continued)* ———————————

assigned to investigate Appellant's allegations. On June 5, 2013, someone from the District Attorney's Office e-mailed Appellant, explaining that if the reviewing detective believed there was sufficient information to support probable cause for an arrest, that detective would submit an affidavit of probable cause to the charging unit; the charging unit would then draft a criminal complaint based on the affidavit of probable cause. The certified record does not contain any documentation suggesting the detective assigned to review Appellant's allegations submitted an affidavit of probable cause for Mildred E. Brooks' arrest or that any criminal charges were filed against her.

[5] *See* Pa.R.C.P. 233.1(a) (stating: "Upon the commencement of any action filed by a *pro se* plaintiff in the court of common pleas, a defendant may file a motion to dismiss the action on the basis that (1) the *pro se* plaintiff is alleging the same or related claims which the *pro se* plaintiff raised in a prior action against the same or related defendants, and (2) these claims have
*(Footnote Continued Next Page)*

and Statewide Abstract joined. Mustafa Salah and Armando Ahmad filed a similar motion to dismiss.

Appellant filed a motion for oral argument on April 14, 2014.[6] By order dated April 30, 2014 and entered May 1, 2014, the court sustained Chicago Title's preliminary objections and dismissed the amended complaint. As well, the court struck the *lis pendens*. By separate orders entered May 2, 2014, the court sustained the remaining preliminary objections and dismissed the amended complaint against all other Appellees.

Appellant filed a motion for reconsideration on May 15, 2014. While her motion was pending, Appellant timely filed a *pro se* notice of appeal on May 30, 2014. On June 10, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On June 30, 2014, the court denied Appellant's motion for reconsideration due to the pending appeal. Appellant timely filed her Rule 1925(b) statement on July 1, 2014.

Appellant raises eight issues for our review:

> WHETHER THE TRIAL COURT ERRED BY NOT FOLLOWING THE INTENT OF THE LAW BY LIFTING A *LIS PENDENS* WITHOUT DECIDING LEGAL OWNERSHIP OF PROPERTY?

*(Footnote Continued)* ───────────

already been resolved pursuant to a written settlement agreement or court proceeding").

[6] The court did not expressly rule on Appellant's motion for oral argument or hold oral argument.

WHETHER THE TRIAL COURT VIOLATED APPELLANT'S RIGHT IN DENYING A STAY OF COURT PROCEEDINGS?

WHETHER THE TRIAL COURT FAILED TO CONSIDER NEW AND [MATERIAL] EVIDENCE?

WHETHER THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO BE HEARD BY DENYING APPELLANT'S MOTION [FOR] ORAL ARGUMENTS?

WHETHER THE TRIAL COURT ORDER DATED APRIL 30, 2014 PROVIDING INCORRECT FACTS AMOUNTS TO PREJUDICIAL ERROR?

WHETHER THE TRIAL COURT ERRED IN MAKING A DECISION WHILE [THE] CASE WAS STILL IN THE DISCOVERY PHASE.

WHETHER THE TRIAL COURT ERRED IN ITS HANDLING OF APPELLANT'S MOTION FOR RECONSIDERATION?

WHETHER THE TRIAL COURT ERRED IN IMPLYING THE MATTER WAS PREVIOUSLY DECIDED AGAINST ALL APPELLEES?

(Appellant's Brief at 3).

Preliminarily, appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. **See also** Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." **In re Ullman**, 995 A.2d 1207, 1211-12 (Pa.Super. 2010), *appeal denied*, 610 Pa. 600, 20 A.3d 489 (2011). "To the contrary, any person choosing to represent [herself] in a legal proceeding must, to a reasonable extent, assume that [her] lack of

expertise and legal training will be [her] own undoing." ***Id.*** Regarding the argument section of an appellate brief, Rule 2119(a) provides:

> **Rule 2119.  Argument**
>
> **(a)  General rule.**—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).  Importantly, where an appellant fails to raise or develop her issues on appeal properly, or where her brief is wholly inadequate to present specific issues for review, this Court will not consider the merits of the claims raised on appeal.  ***Butler v. Illes***, 747 A.2d 943 (Pa.Super. 2000) (holding appellant waived claim where she failed to set forth adequate argument concerning her claim on appeal; argument lacked meaningful substance and consisted of mere conclusory statements; appellant failed to explain cogently or even tenuously assert how trial court abused its discretion or made error of law).  ***See also Lackner v. Glosser***, 892 A.2d 21 (Pa.Super. 2006) (explaining arguments must adhere to rules of appellate procedure and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); ***Estate of Haiko v. McGinley***, 799 A.2d 155 (Pa.Super. 2002) (stating appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in appellate brief, this Court's

ability to provide review is hampered, necessitating waiver on appeal).

Instantly, Appellant's brief contains substantial defects impeding our review of most of the issues Appellant presents on appeal. At the outset, Appellant's brief consists of only six argument sections, although she raises eight issues in her statement of questions presented, in violation of Rule 2119. *See* Pa.R.A.P. 2119(a). These argument sections are titled: (1) Lifting *Lis Pendens*; (2) Motion to Stay and Oral Arguments; (3) April 30, 2014 Order; (4) Right to be Heard; (5) July 31, 2015 Docketed Opinion; and (6) Prejudicial Error. From these vague argument headings, it is unclear which particular points Appellant seeks to raise in each section and which of the eight questions presented fall under each heading. ***See id.*** More importantly, Appellant offers no relevant or precedential legal authority to support the majority of her contentions on appeal, warranting waiver of her claims presented. ***Id.***; ***Lackner, supra***; ***Haiko, supra***; ***Butler, supra***. As well, most of Appellant's arguments are disjointed, undeveloped, and/or duplicate complaints raised in other argument sections of her brief, precluding meaningful appellate review. ***See Lackner, supra***; ***Haiko, supra***; ***Butler, supra***. Notwithstanding these deficiencies, in all fairness to Appellant, we will address whether the court properly sustained Appellees' preliminary objections on the ground of Appellant's lack of standing.

This Court has explained the doctrine of *res judicata* as follows:

> The doctrine of *res judicata* prevents a party from instituting litigation that has been the subject of a lawsuit.

> *Res judicata* means a thing adjudged or a matter settled by judgment. Traditionally, American courts have used the term *res judicata* to indicate claim preclusion, *i.e.*, the rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and constitutes for them an absolute bar to a subsequent action involving the same claim, demand or cause of action.

***Robinson Coal Co. v. Goodall***, 72 A.3d 685, 689 (Pa.Super. 2013) (internal citations and quotation marks omitted). "Application of the doctrine of *res judicata* as an absolute bar to a subsequent action requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; [and] (4) identity of the capacity of the parties." ***Id.*** (quoting ***Dempsey v. Cessna Aircraft Co.***, 653 A.2d 679, 681 (Pa.Super. 1995) (*en banc*), *appeal denied*, 541 Pa. 631, 663 A.2d 684 (1995)).

> The doctrine of *res judicata* should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties. The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this [is] the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule.

***BuyFigure.com, Inc. v. Autotrader.com, Inc.***, 76 A.3d 554, 561 (Pa.Super. 2013), *appeal denied*, 624 Pa. 660, 84 A.3d 1061 (2014)

(internal citations and quotation marks omitted).  Additionally:

> The doctrine of collateral estoppel, or issue preclusion, applies where the four prongs are met:
>
> (1)   An issue decided in a prior action is identical to one presented in a later action;
>
> (2)   The prior action resulted in a final judgment on the merits;
>
> (3)   The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and
>
> (4)   The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Rue v. K-Mart Corp.*, 552 Pa. 13, 17, 713 A.2d 82, 84 (1998).  "Parties to a subsequent action need not be the same as those in the prior suit in order to raise the question of collateral estoppel.  Collateral estoppel may be used as either a sword or a shield by a stranger to the subsequent action, as long as the party against whom the defense is invoked is the same."  *Thompson v. Karastan Rug Mills*, 323 A.2d 341, 344 (Pa.Super. 1974) (internal quotation marks omitted).

Further, "[g]enerally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question already decided by a transferor trial judge."  *Zane v. Friends Hosp.*, 575 Pa. 236, 243, 836 A.2d 25, 29 (2003).  In most circumstances, the coordinate jurisdiction rule prevents judges of coordinate jurisdiction from overruling

each other's decisions. *Id.* Departure from the rule occurs only in exceptional circumstances, such as a change in the controlling law, a substantial change in the facts or evidence, or if the prior judge's order is "clearly erroneous and would create a manifest injustice if followed." *Id.* at 244, 836 A.2d at 29 (internal citation omitted).

As standing is the threshold issue in this case, we first address Appellees' preliminary objections to Appellant's complaint based on her lack of standing to pursue her claim. *See Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 202, 888 A.2d 655, 659 (2005). "Prior to judicial resolution of a dispute, an individual must as a threshold matter show that [she] has standing to bring the action." *Id.* at 203, 888 A.2d at 659.

The Decedents, Estates and Fiduciaries Code ("Code") provides, in pertinent part, as follows:

> **§ 3311. Possession of real and personal estate; exception**
>
> **(a) Personal representative.**—A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of death by an heir or devisee with the consent of the decedent. [She] shall collect the rents and income from each asset in [her] possession until it is sold or distributed, and, **during the administration of the estate, shall have the right to maintain any action with respect to it** and shall make all reasonable expenditures necessary to preserve it. The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir

or a devisee if this is necessary to protect the rights of claimants or other parties. Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee.

20 Pa.C.S.A. § 3311(a) (emphasis added). "The terms of the [Code] must be strictly complied with if the legislative purpose is not to be thwarted." *Maier v. Henning*, 525 Pa. 160, 167, 578 A.2d 1279, 1283 (1990) (internal citation omitted). "The purpose of the Code was to create stability of procedure for disposition of decedents' realty and personalty and certainty in marketability of title." *Id. See also In re Kurkowski's Estate*, 487 Pa. 295, 409 A.2d 357 (1979) (explaining it is personal representative's duty to take custody of and administer estate in manner so as to preserve and protect property for distribution to proper persons within reasonable time); *In re Kilpatrick's Estate*, 368 Pa. 399, 84 A.2d 339 (1951) (stating administrator of estate alone has right to sue on its behalf; orderly procedure requires strict adherence to rule that only personal representative of deceased party in interest stands in shoes of decedent; legatees, spouses or next of kin of decedent have no such interest until it is shown by way of personal representative's accounting that all creditors or those having prior claim have been satisfied and distributees' rights fixed); *Oudry-Davis v. Findley*, 64 Pa.Super. 92 (1916) (explaining heirs lack standing to recover estate assets in name of decedent; generally, no one other than personal representative has any right to bring suit to recover on behalf of estate).

Instantly, the trial court explained its rationale for sustaining

Appellees' preliminary objections as follows:

> The *pro se* [Appellant] in this matter previously filed essentially the same matter, on the same issues, against the same parties and/or parties in privity with the same parties. The prior filed matter on the same issues, which included parties to this action, was dismissed with prejudice in favor of all Defendants by [another court] by Order dated March 13, 2012 [and filed March 15, 2012] in the case of **Darlene Melton v. Estate/Heirs of Mildred Brooks, et. al.**, August Term, 2011, No. 01753. …
>
> Therefore, based on the doctrines of collateral estoppel and *res judicata*,…as well as on the rule of coordinate jurisdiction[,] pertinent to the Order of [the court on March 15, 2012], the instant action must conform to said order and be **DISMISSED WITH PREJUDICE,** and *LIS PENDENS* is **STRICKEN**.

(Order, entered May 1, 2014, at 1-2) (internal citation omitted).

Appellant alleged in the 2011 action, and again in the 2013 action, that the Register of Wills had granted her letters of administration for her father's estate in July 2011, but she failed to mention in both actions that her letters were later revoked on November 9, 2011. Significantly, Appellant purported to bring the 2013 action solely on behalf of her father's estate, as shown in the caption of her complaint. Appellant, however, is not the personal representative of her father's estate. As of November 9, 2011, Appellant lacked standing to pursue the 2011 complaint; likewise, she still lacked standing when she initiated the 2013 action.[7] **See** 20 Pa.C.S.A. §

---

[7] Even if Leonard Brooks had initiated a suit while he was alive, only the personal representative of his estate could pursue the litigation after his

*(Footnote Continued Next Page)*

- 14 -

3311; ***In re Kilpatrick's Estate, supra***; ***Oudry-Davis, supra***.  Due to our disposition that Appellant lacked standing to bring the 2013 cause of action, we do not have to decide whether the doctrines of *res judicata*, collateral estoppel, or the coordinate jurisdiction rule apply in this case.  ***See Rambo v. Greene***, 906 A.2d 1232 (Pa.Super. 2006) (explaining Superior Court can affirm decision of trial court on any correct basis).  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016

---

*(Footnote Continued)* ——————————

death.  ***See*** 20 Pa.C.S.A. § 3373 (stating action or proceeding to enforce any right or liability which survives decedent may be brought by or against his personal representative alone or with other parties as though decedent were alive).