444 A.2d 1224

**ESTATE OF Sara Nemeroff GREENBERG, deceased.**

**Appeal of Ann FINKELMAN.**

**Stanley Nemeroff (Executor).**

Superior Court of Pennsylvania.

Argued Feb. 2, 1982.

Filed April 23, 1982.

380 ·

Steven Paul Burkett, Philadelphia, for appellant.

Nancy Marilyn Weinman, Philadelphia, for participating party.

Before WICKERSHAM, ROWLEY and McEWEN, JJ.

WICKERSHAM, Judge:

Sara Nemeroff Greenberg died June 28, 1978 leaving a will dated October 24, 1977. She was not survived by a spouse, but was survived by issue. By her will, testatrix devised and bequeathed her estate as follows: $1,000 to her sister, Ann Finkelman; five $1,000 pecuniary legacies to her five named grandchildren; premises 6340 Algon Avenue, Philadelphia, Pennsylvania, and contents to her daughter, Arlene Brehm, and the remaining balance as follows: one-third to her daughter, and the remaining two-thirds to her son, Stanley Nemeroff.

During the course of the administration of the estate, the executor, Stanley Nemeroff, filed a petition for citation to compel respondent, Ann Finkelman, to return personal property to the estate, specifically a diamond engagement ring and a diamond wedding band. The petition alleged, *inter alia*, that at the time of her death, Sara Nemeroff Green-

berg owned both items which were located in an apartment which decedent shared with respondent, Ann Finkelman, and which were allegedly taken by respondent in violation of the rights of those interested in the estate. Subsequently, the court by order dated November 29, 1978 ordered and decreed that the prayer of the petition for citation be granted and a citation issued to Ann Finkelman to show cause why she should not return decedent's engagement ring and wedding band to the estate.

On March 5, 1980 a hearing was held in the Court of Common Pleas of Philadelphia County, Orphans' Court Division, before the Honorable Paul Silverstein relating to the petition for citation. One of the witnesses for the respondent was Faye Goodman of Melrose Park, Pennsylvania who testified as follows:

Q. . . . . What is your relationship to the respondent, Miss Finkelman, if any?

A. We're friends.

. . . .

A. I go to Ann Finkelman for my manicures.

Q. Did you know the decedent, Sara Greenberg?

A. I met her and I knew her, yes.

. . . .

Q. Were you ever present at a time when a conversation took place between the decedent, Mrs. Greenberg, and Ann Finkelman concerning a diamond wedding band and a diamond engagement ring?

A. Yes. Yes, I was.

. . . .

Q. And what were the circumstances that this—in other words, where were you at the time the conversation took place?

A. In the bedroom, in Ann's bedroom.

Q. What were you doing at that time?

A. I was getting a manicure.

Q. Okay. And what was the conversation?

A. Her sister walked into the bedroom and said—she was looking for her gold chain with a chai, and she said, 'Ann, do you have it?' So Ann went over to her jewelry box and took the rings out and she said, 'Here,' she said, 'I have your rings, but I don't have your chain with the chai.' She said, 'I gave them to you, Ann. You know that.' And Ann put them back in the jewelry box, and Ann then said, 'Why don't you look in your purse? Maybe your chain is in your pocketbook, in your purse.' With that, her sister turned around and walked out of the room, into the livingroom. And Ann put the rings back in the jewelry box.

Q. Where was the jewelry box located?

A. On the dresser, in the bedroom.

Q. And you don't—do you have—did you say you have a recollection as to the date of this conversation?

A. Not the date. I know it was in February.

Q. Of 1978?

A. '78, right.

Record at 44–47.

By opinion and order dated December 16, 1980, Judge Silverstein confirmed the account *nisi* and directed the respondent to return the rings to the executor for the purpose of administration and distribution in accordance with the will. Judge Silverstein concluded that the decedent never made an *inter vivos* gift to anyone and never intended to give up title to the rings during her lifetime. Thus, he concluded, the respondent failed to prove the gift by clear and convincing evidence. Exceptions to the adjudication were filed by Ann Finkelman and subsequently argued before the orphans' court division *en banc* consisting of Administrative Judge Edmund S. Pawelec, and Judges Theodore S. Gutowicz, Paul Silverstein, Judith J. Jamison and Senior Judges Charles Klein and Kendall H. Shoyer, Specially Presiding. In an opinion *sur* exceptions by Judge Jamison on behalf of the court *en banc*, the order of the auditing

judge was affirmed, the exceptions dismissed and the adjudication confirmed absolutely. This appeal followed.[1]

In his opinion confirming the account *nisi* dated December 16, 1980, Judge Silverstein correctly set forth the questions presented at the hearing held March 5, 1980 when he said:

The questions presented at the hearing were as follows:

1. Has the respondent shown by independent evidence a prima facie inter vivos transfer so as to permit her to testify to transactions which took place, purportedly, during the decedent's lifetime?

2. Did respondent sustain her burden of establishing an inter vivos gift of the rings by clear and convincing evidence?

1. Appellant frames the issues as follows:

I. Did the Court err in failing to find that Decedent made an inter vivos gift to Appellant of two rings belonging to Decedent?

II. Did the Court abuse its discretion by not considering the interest or lack of interest in the outcome of the litigation when evaluating the testimony of the witnesses?

Brief for Appellant at 3.

And summarizes her argument as:

The Auditing Judge made an initial finding that Decedent had not given the rings to the Appellant. However, the Auditing Judge misconstrued the conversation which clearly and unequivocally confirmed the making of the gift. The Auditing Judge based all of his subsequent findings on his initial misconstruction. The Court en banc, in reviewing the findings of the Auditing Judge, found that the Auditing Judge had misconstrued the conversation, but then it misquoted the conversation. Had the Auditing Judge initially and the Court en banc on review correctly read the testimony, they could have come to no conclusion other than that a gift was made of the rings.

The Auditing Judge applied an incorrect standard of proof to Appellant. The Auditing Judge required that Appellant prove the making of a gift by clear and convincing evidence. Less evidence is required to establish a gift when a gift has been alleged to have been made to close relation or friend. Appellant was a close relation to the Decedent.

The Auditing Judge chose to believe the witnesses offered by the Appellee because he believed their testimony fit into a bailment theory which the Auditing Judge created, despite the fact that the witnesses offered by the Appellee had an interest in the outcome. In considering the testimony of Appellee's witnesses, the Court failed to consider their interest in the outcome.

Brief for Appellant at 6.

With respect to the first question, the independent evidence offered by the respondent to prove a prima facie case rests in the testimony of one Faye Goodman, a business acquaintance and friend of the respondent. Her testimony, taken at its best, does not materially support the respondent's position. It is equivocal and subject to two interpretations.

Both sides have quoted the same testimony, which appears on pages 46 and 47 of the transcript. In that alleged conversation, the witness testified that the decedent came into her sister's bedroom (decedent and respondent shared an apartment) and asked if the sister had the decedent's chain and chai. The respondent is quoted as saying: 'I have your rings' to which the decedent is alleged to have stated: 'I gave them to you.' What did the decedent mean and to what was she referring?

The respondent contends that 'I gave them to you' means the rings, whereas the executor contends that such a statement can just as easily refer to the chain and chai. Furthermore, the quoted statement of the respondent that 'I have your rings' connotes that she was holding the rings that belonged to the decedent in a bailment sense, as suggested by the executor, as opposed to a sense in which the respondent was merely giving a description of the nature of the objects.

Lower ct. op. at 3–4.

In the recent case of *In re: Estate of Robert G. Baker*, 495 Pa. 522, 434 A.2d 1213 (1981), the question before the supreme court was the disputed ownership of various items of personal property, including a John Deere bulldozer. The Court of Common Pleas of Cameron County had issued a decree directing appellants to surrender the bulldozer to the appellee, executor of the estate. Appellant claimed ownership of the bulldozer as an *inter vivos* gift. The court said:

The controversy concerning the ownership of the bulldozer involves two interrelated legal questions. First, was the testimony of appellants concerning the alleged inter vivos gift admissible under the Dead Man's Act? Second, was a valid inter vivos gift of the bulldozer proven?

The application of the Dead Man's Act has been thoroughly discussed elsewhere. *See Hendrickson Estate,* 388 Pa. 39, 130 A.2d 143 (1957). There is no dispute here that the three conditions enumerated in *Hendrickson Estate* are present in this case and bring the provisions of the Dead Man's Act into play. The difficulty here is the application of the Dead Man's Act where there is an allegation of an inter vivos gift. Appellants argue that the evidence shows a gift by decedent to them thereby removing the adverse interest of the decedent and making appellants competent to testify. We have encountered this argument in the past and have fashioned the following answer to it:

> In such situations, both the alleged donee and the estate have an interest in the property which may be adverse to the interest of the decedent, depending on whether the alleged transfer took place or not. We held [in *Ford Estate,* 431 Pa. 185, 245 A.2d 443 (1968)] that if a valid inter vivos transfer can be shown by independent evidence *before* the admission of any testimony by the alleged donee, the donee will be considered to represent the interest of the decedent and will be permitted to testify. Conversely, if the alleged donee fails to establish a prima facie gift by independent testimony before he takes the stand, he will not be competent to testify.

*Friedeman v. Kinnen,* 452 Pa. 365, 368–69, 305 A.2d 3, 4 (1973) (emphasis in original).

. . . .

. . . . The appellants had the burden of proving that the decedent, with donative intent, had delivered, either actually or constructively, the bulldozer to them and that the decedent had divested himself of and invested them with requisite dominion over the bulldozer. *Donsavage Estate,* 420 Pa. 587, 218 A.2d 112 (1966). 'To establish such a gift inter vivos the evidence must arise not only from legally competent witnesses but also be clear, direct, precise and convincing.' *Id.,* 420 Pa. at 594, 218 A.2d at 118. Because no prima facie evidence of a gift was established, appel-

lants' testimony was correctly ruled incompetent under the provisions of the Dead Man's Act. Certainly if no prima facie evidence of an inter vivos gift was presented, the existence of an inter vivos gift was not proven. *Id.*, 495 Pa. at 528, 434 A.2d at 1215–16.

Instantly we concur with the analysis and conclusion of Judge Silverstein and the confirming opinion of Judge Jamison writing for the court *en banc,* that the evidence to establish a gift *inter vivos* of the diamond wedding band and engagement ring was not clear, direct, precise and convincing.

■ As Judge Jamison said:

Sara Nemeroff Greenberg, the decedent, resided with her sister, the respondent, in a two bedroom apartment at the Park Drive Manor Apartments. The alleged transfer of the rings took place in January, 1978, while the decedent was suffering a heart attack and was being rushed by the respondent to the hospital for medical treatment.

The Auditing Judge found that decedent's later statement to the respondent that 'I gave them (the rings) to you to keep,' was ambivalent or equivocal. Language to this effect was as consistent with a bailment as a gift.

Testimony by the executor that he had seen the rings on his mother's fingers on May 7, 1978, one month before her death was found to contravene respondent's allegation that an absolute gift had been made before February, 1978.

The record discloses that on about six occasions, decedent had given her rings to a friend or neighbor for safekeeping before she went into the hospital. It is reasonable to conclude that in January, 1978, before a hospitalization, decedent gave her rings to her sister 'to keep' or safeguard for her. We agree with the finding of fact by the Hearing Judge that 'the decedent never made an inter vivos gift to anyone and never intended to give up title to the rings in her lifetime.' The Auditing Judge, who had the opportunity to observe and hear the witnesses, concluded that the respondent had failed to prove the

gift by clear and convincing evidence. The determination of the credibility of witnesses by the Auditing Judge is binding on the Court en banc absent manifest error or unwarranted inferences or conclusions. *Shelly Estate,* 484 Pa. 322 [399 A.2d 98] (1979); *Jacob's Trust Estate,* 320 Pa. 539 [183 A. 49] (1936); *Kauffman's Estate,* 281 Pa. 519 [127 A. 133] (1924); Accord; *McCrea Estate,* 475 Pa. 383 [380 A.2d 773] (1977); *Estate of Frances Siloff,* No. 2203 of 1977, May 30, 1979. Our review of the record indicates that the Auditing Judge's findings of fact and conclusions of law were proper. 'His findings of fact are tantamount to the verdict of the jury and since the record reveals no caprice or arbitrariness in the findings, they are binding upon us.' *Rachaelson Estate,* 32 D&C2d 722, 723, 14 Fid.Repr. 149, 150 (1964), *Pavlinko Estate,* 399 Pa. 536, 160 A.2d 554 (1960).

Opinion *En Banc* at 2, 3.

■ The testimony of Mrs. Goodman was equivocal and because no prima facie evidence of a gift was established, appellant's testimony was correctly ruled incompetent under the provisions of the Dead Man's Act.

Decree affirmed. Each party to pay own costs.