J-A23022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ESTATE OF JAMES G. KLINGENSMITH, DECEASED<br><br>APPEAL OF:  JOSPEH KLINGENSMITH AND JOHN KLINGENSMITH | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 71 WDA 2019 |

Appeal from the Order Entered December 11, 2018
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-11-04852

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:           **FILED NOVEMBER 27, 2019**

Appellants, John Klingensmith ("John") and Joseph Klingensmith ("Joseph"), co-executors of the Estate of James G. Klingensmith ("James G." or "Decedent"), appeal from the order, dated December 6, 2018 and entered December 11, 2018, that directed Cynthia Klingensmith ("Cynthia"), daughter-in-law of Decedent,[1] to deliver to John and Joseph certain disputed items of jewelry and other items consisting of sports memorabilia that were in Cynthia's possession.  After review, we vacate and remand the case with instructions.

We begin by setting forth our standard of review.

Our standard of review of the findings of an Orphans' Court is deferential.

_____

[1] Cynthia is the widow of James C. Klingensmith ("James C."), a brother of Appellants, who was initially the executor of Decedent's estate, but passed away in August of 2015.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Estate of Harrison*, 745 A.2d 676, 678-79 (Pa. Super. 2000), *appeal denied*, 563 Pa. 646, 758 A.2d 1200 (2000) (internal citations and quotation marks omitted). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003), *appeal denied*, 577 Pa. 722, 847 A.2d 1287 (2003).

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (quoting *In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa. Super. 2012)).

Appellants raise the following two issues for our review:

1. Did the testimony of Cynthia Klingensmith's independent witnesses establish a *prima facie* case of an *inter vivos* gift despite the lack of clear, direct, and convincing evidence of donative intent and delivery of the alleged gifts of any of the property[,] which Judge McCarthy awarded to Cynthia?

2. Was Cynthia Klingensmith, whose independent witnesses failed to establish a *prima facie* case of any *inter vivos* gift by clear and convincing evidence, entitled to testify despite the bar of the Dead Man's Act?

Appellants' brief at 4.

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough 9-page opinion of the Honorable Michael E.

- 2 -

McCarthy of the Court of Common Pleas of Allegheny County, dated March 11, 2019. We conclude that Judge McCarthy's well-reasoned opinion accurately disposes of the issues presented by Appellants. Accordingly, we adopt his opinion as our own with respect to the issues raised in this appeal.

However, we note that it appears that the court erred in instructing Cynthia to return certain items of undisputed jewelry in its order, as it is evident she is not in possession of this jewelry, except for the cluster ring and diamond stud earrings, which she is allowed to keep. Rather, Vincent Klingensmith testified that he was in possession of this jewelry. *See* N.T., 7/30-31/18, at 331 (469a). Moreover, Appellants' Exhibit 22 states that "[a]ll jewelry [is] in the possession of Vincent Klingensmith or a gun safe in his house." Therefore, despite our agreement with the trial court's analysis of the issues raised, we are compelled to vacate its order and remand so that the trial court is able to correct its directions as to the distribution of some of the jewelry belonging to the estate.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2019

- 3 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

IN RE:                                         ORPHANS' COURT DIVISION

ESTATE OF JAMES G. KLINGENSMITH,    No.    02-11-04852
DECEASED                                              71 WDA 2019

## OPINION

This action concerns the Estate of James G. Klingensmith (hereinafter "James G." or "Decedent") who died, testate, on July 25, 2011.[1] Consistent with the provisions of the Last Will and Testament signed by James G. May 30, 2007, letters of administration were issued to Decedent's son, James C. Klingensmith (hereinafter "James C."), on August 8, 2011.

Decedent was a widower who, in or around 2005, elected to move from his own residence and to reside, instead, with his son and daughter-in-law, James C. and Cynthia. Decedent continued to reside with James C. and Cynthia until his death on July 25, 2011.

On August 8, 2011, consistent with Decedent's last will and testament, letters testamentary were issued to James C. Upon his appointment as executor, James C. retained local counsel to assist and advise him in the administration of the estate. With the assistance of counsel, James C. prepared an inventory of his father's estate which was filed with the Register of Wills on April 19, 2012. That inventory identified an automobile, miscellaneous household goods, a pocket watch and a *de minimis* insurance refund as assets of the estate. Additionally, under the heading "ladies jewelry", the inventory set forth an itemized list of eleven pieces of jewelry, each appraised, and all of which had a cumulative value of $27,000.00. The total value of all items set forth in the inventory was

---

[1] The date of death indicated on the application for letters testamentary is July 25, 2011. The parties have variously reported the date of death as July 23, 2011 and July 27, 2011 in their respective proposed findings of fact.

2

$34,903.33. An inheritance tax return, which reflected those same values, was signed by counsel as the preparer and was filed that same day.

The estate remained open with little activity of record until October 2013. On or about October 23, 2013, Joseph and John Klingensmith, through their respective counsel, filed a Petition for Citation for a Rule to Show Cause Why a Citation Should Not Be Issued Pursuant to 20 Pa. Cons. Stat. §3501.1. That provision of Title 20 allows such a citation to be filed at any time after the expiration of six months from the first complete advertisement of the original grant of letters. By Order dated October 28, 2013, a rule was entered which directed James C. to show cause why the requested relief, the filing of an account for the estate, should not be granted. The rule was returnable December 6, 2013.

On December 9, 2013, the parties attended an informal conference before the Honorable John A. Zottola. At the conclusion of that conference, it was apparently agreed that, in resolution of the rule to show cause, James C., in his capacity as executor, would provide an informal accounting to all beneficiaries. Thereafter, the three brothers met on at least two occasions to discuss the whereabouts of estate property, including jewelry, furniture, photographs and photo negatives which Joseph and John asserted to be estate property.[2] The record reflects no further activity on behalf of the estate until October 14, 2014, on which date a status report was filed indicating that "the Estate is in litigation". Subsequent to that filing, no further activity of record occurred until September 2015.

James C. passed away on August 22, 2015, leaving the administration of the estate open. On September 17, 2015, Joseph and John, having been named in Decedent's Last Will and Testament as contingent co-executors, were sworn in as such and were issued letters testamentary for the estate. Joseph and John have served in that capacity since that time. As co-executors, Joseph and John pursued certain personalty of the Decedent which, they assert, had been situate at the residence of James C. at the time of Decedent's death

---

[2] Petition for Citation Directing Cynthia Klingensmith Appear to be Deposed and Produce Estate Property, at ¶¶5, 6.

3

Appendix 12

but had not been included in the inventory filed on behalf of the estate during James' tenure as executor.

Specifically at issue in this matter is personalty which Cynthia and James C., had had in their possession at the time of Decedent's death, and which had been retained by them subsequent to the death of Decedent as property that had been gifted to them, or to either of them individually, during the time that Decedent had resided at her home. Cynthia has additionally contended that some items had been given to by her husband during his lifetime or had been independently acquired by her before marriage. There is no dispute that, throughout the time that Decedent had resided with James C. and Cynthia, Cynthia occasionally wore jewelry pieces which are asserted in this matter to be estate property, but which are not reflected in the inventory filed of record by James C.

On November 9, 2015, Joseph and John, in their capacity as co-executors and on behalf of the estate, petitioned the court for a citation directing Cynthia to "Appear and Be Deposed and Produce Estate Property". That petition requested that Cynthia be directed to present herself for a deposition and to bring with her "any and all jewelry identified [in exhibits to the petition] and other jewelry or property belonging to the late James G. Klingensmith at the time of his death".

On November 12, 2015, the co-executors filed an additional, emergency motion. That motion asserted that, based upon information received from a surviving daughter of James C., other items of personal property belonging to decedent's estate, not limited to jewelry, and had been wrongly excluded from the inventory which James C. had filed.

On November 13, 2015, an order of court was issued which restrained Cynthia from selling, disposing of or dissipating the personal property of the Estate of James G. Klingensmith and directed all parties to appear in court on November 18, 2015 to determine whether that injunction should remain in place. Apparently, it was agreed among the parties on November 18 that Cynthia would permit the co-executors access to her home on November 24, 2015 for the purpose of removing household items, including furniture, china, silverware and any other personalty of the Decedent. Such an agreement

4

was not made part of any formal order of court. The sole order that was issued immediately following the November 18 hearing was a scheduling order which directed that a hearing on the petition by the co-executors to freeze assets would be heard on January 27, 2016.

In the interim, on December 15, 2015, a second emergency motion was filed on behalf of the estate. That motion asserted that Cynthia had refused to comply with an agreement among the parties that the co-executors would be permitted access to her home for the purpose of removing estate property.[3] The parties disagreed at that time, and continued to disagree, which items of personalty constituted estate property and which had been the property of Cynthia or gifted to Cynthia and James C. during the Decedent's lifetime.

The matter did not resolve and the parties proceeded to a bench trial which was heard on July 30 and 31, 2018. At that trial, both parties acknowledged that the burden of demonstrating the fact of acquisition by gift was on the Respondent, Cynthia, and that the evidentiary burden assigned to Cynthia in this matter was to demonstrate donative intent and actual delivery of each gift through "clear, precise and convincing evidence".[4] That standard of proof requires a credible, detailed account of events that is distinctly remembered by the witness and that sufficiently describes a donative intent.

The parties' dispute over the ownership of personalty in this matter resulted, in substantial part, from the Decedent's decision in 2005 to move from his residence and to reside, instead, with James C. and Cynthia following the death of his wife, Angela. It appears that, throughout that approximate six-year period that the Decedent continued to reside with his son and Cynthia, much of the jewelry that is presently in dispute was kept at the residence of James C. and Cynthia and, at some juncture, was placed and kept in the personal jewelry box of Cynthia or in an armoire situate in her bedroom. Other items, such as sports memorabilia acquired by the Decedent, was also kept at that residence.

---

[3] It appears that movers retained by the co-executors, rather than the co-executors themselves, arrived at the house.

[4] *Hera v. McCormick*, 625 A 2d 682; 686 (Pa. Super. 1993); In re Estate of Flickert, 337 A2d. 592 (1975)

5

Appendix 14

Although the Decedent had once maintained a safe deposit box, he discontinued that rental sometime after he began residing with James C. and Cynthia. After Decedent had passed, James C. and Cynthia leased a safe deposit box at PNC Bank in joint name. Both James C. and Cynthia were signatories, and they placed in that PNC Bank box jewelry which, Cynthia asserts, had been gifted to her as well as items and jewelry which all parties acknowledge Decedent had retained as his own.[5]

It was not disputed that, during the time that Decedent had resided with James C. and Cynthia, Cynthia occasionally wore jewelry pieces which the Petitioners have since asserted is estate property. Cynthia insisted that the Decedent had, in fact, gifted such items to her during his lifetime. The personalty in dispute in this matter is property claimed by the estate which Cynthia maintains had been gifted to her by the Decedent during his lifetime, had been gifts received from her husband, or is property which Cynthia had acquired before her marriage to James C.

The parties acknowledged that the burden of acquisition of any property by *inter vivos* gift from the Decedent was on the Respondent, Cynthia. Such a burden requires that donative intent as well actual delivery of each gift to the donee during Decedent's lifetime be demonstrated through "clear, precise and convincing evidence".[6] That evidentiary burden of demonstrating a deliberate, completed gift may be met through a coherent, consistent and sufficiently detailed account:

> [T]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. . . . It is not necessary that the evidence be uncontradicted . . ., provided it 'carries a clear conviction to the mind' . . . or carries 'a clear conviction of its truth'.

> *LaRocca Trust*, 411 Pa 633,640
> 192 A 2d 409, 413 (1963)

---

[5] See, e.g.,N.T., 232

[6] *Hera v. McCormick*, 625 A 2d 682; 686 (Pa. Super. 1993); In re Estate of Flickert, 337 A2d. 592 (1975)

6

## 1. Dead Man's Act

Petitioners contend that Cynthia's claim as to the disputed personalty must fail inasmuch as the claim relies substantially on Cynthia's own testimony and that the court erred by permitting Cynthia to testify to the donative intent of the Decedent regarding the jewelry or personal property that was allegedly acquired from the Decedent during his lifetime. Specifically, Petitioners contend that the Dead Man Act, 42 Pa.C.S. §5930 rendered Cynthia incompetent to testify on that topic.

Assuming Petitioners' contentions to be correct, Respondent's supportive witnesses were nonetheless competent to testify to having observed Cynthia wearing the jewelry when the Decedent was present, and that Cynthia represented, and the Decedent confirmed, at those times that the jewelry had been given to her by the Decedent. Testimony from competent non-party witnesses with no interest in the estate described instances of the Decedent's demonstrations of largesse or gratitude towards Cynthia, confirming that he had given her jewelry.[7] Following those witnesses, Cynthia testified credibly to the fact that the Decedent had made gifts of jewelry to her during his Decedent's lifetime and that such gifts were confirmed openly by the Decedent in the presence of others. If, as in this instance, "a valid *inter vivos* transfer is demonstrated by independent evidence before the admission of any testimony by the alleged donee, the donee will be considered to represent the interest of the decedent and will be permitted to testify". *Friedeman v. Kinnen*, 452 Pa. 365, 369, 305 A.2d 3, 4 (1973).

Petitioners contended that the relationship between Decedent and Cynthia had not been sufficiently close and affectionate to warrant a finding that the Decedent would have made gifts of jewelry to Cynthia during the Decedent's lifetime. Credible testimony contradicted that contention. By way of example, although one of Decedent's grandsons testified on direct examination that he doubted that the Decedent had intended to make any *inter vivos* [gifts] to Cynthia because "My Pap, just, didn't give stuff away in that manner to

---

[7] See, *e.g., In re Ford's Estate*, 431 Pa. 185, 188, 245 A.2d 443, 445 (1968)

7

someone he just met, so to say, that have been together for a short period of time", he further testified that he had observed Decedent having gifted the witness' own young daughter with jewelry and testified on cross examination that he had heard other witnesses describe the relationship between the Decedent and Cynthia as "very close and very loving". That witness acknowledged, in fact, that the relationship between the two was close [8]

As a whole, the testimony provided in this matter provides little reason to doubt that the Decedent would have had cause and occasion to present gifts of jewelry to Cynthia from time to time, and to have noted that fact to others.

### 2. Clear and Convincing Standard of Proof

Evidence may be found to be clear, precise and convincing when the witnesses are found to be credible, the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and the testimony is so clear, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. *In re Estate of Fickert,* 461 Pa. 653, 337 A.2d 592 (1975).

In the matter at hand, by averring that a completed *inter vivos* gift of personalty had occurred, Cynthia assumed the burden of proving that the decedent, with donative intent, had delivered, either actually or constructively, such property to her or to her and her husband and that the decedent had divested himself of that personalty and had invested her or them with requisite dominion over the property. See, *Donsavage Estate,* 420 Pa. 587, 218 A.2d 112 (1966); *Estate of Greenberg,* 298 Pa. Super. 379, 385, 444 A.2d 1224, 1227 (1982). A significant aspect of that burden is, of course, demonstrating an actual transfer [of] ownership between individuals residing in the same household. In that regard, Respondent's contentions were rendered more credible by the association of events with

---

[8] N. T.,338

8

particular gifts and, as stated, the corroborative testimony of the close relationship and observed interactions between Respondent and decedent. Petitioners ask, in effect, that that which Petitioner's own witnesses have confirmed be ignored.

March 11ᵗʰ, 2019

By the Court:

Michael E. McCarthy

9